# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

HARRY LAWRENCE QUIGLEY,

        Plaintiff,

v.                             CIVIL ACTION NO. 3:17-cv-01906

CITY OF HUNTINGTON, WEST VIRGINIA;
SHANE BILLS; CASEY WILLIAMSON;
JOEY KOHER; JASON SMITH; and
JAMES TALBERT,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Proceeding *pro se*, Plaintiff, Harry Quigley, commenced this suit under 42 U.S.C. § 1983 alleging, in relevant part, violations of his rights under the Fourth Amendment and the Fourteenth Amendment. *Compl.*, ECF No. 2, at ¶ 27-30. Per standing order, the case was referred to Magistrate Judge Eifert for Proposed Findings and Recommendations ("PF&R"). *Standing Order*, ECF No. 3, at 2. Magistrate Judge Eifert issued her PF&R on September 22, 2017. In her PF&R, Judge Eifert recommends that this Court grant, in part, and deny, in part, Defendants' Motions to Dismiss (ECF Nos. 14, 24). *PF&R*, ECF No. 38, at 27-28. As explained below, the Court will adopt Judge Eifert's findings and recommendations, consistent with this Memorandum Opinion and Order. Therefore, the Court grants, in part, and denies, in part, Defendants' Motions to Dismiss.

Plaintiff filed objections to the PF&R on October 6, 2017, which the Court will address under *de novo* review. Although Magistrate Judge Eifert made a number of factual and legal

findings, Plaintiff only objects to two of Magistrate Judge Eifert's findings and recommendations. 28 U.S.C. § 636(b)(1)(C). The Court rejects Plaintiff's objections.

**I. Background**

Plaintiff's claims arise out of interactions he had with City of Huntington police officers. On March 17, 2017, a Huntington police officer arrested Plaintiff and charged him with brandishing, a misdemeanor offense. *Second Am. Compl.*, ECF No. 33, at ¶ 8-21; *PF&R*, at 2. The arrest occurred after a Cabell County Deputy Sheriff witnessed a part of an altercation during which Plaintiff produced a knife in self-defense. *Id.* at ¶ 20-23; *PF&R*, at 3.

That evening, Plaintiff had been en route to Kroger to purchase a few items. *Id.* at ¶ 17; *PF&R*, at 3. As Plaintiff had voluntarily relinquished ownership of a car, Plaintiff usually walked to the store on foot. *Id.* at ¶ 15-17; *PF&R*, at 3. Only one block separated his home from Kroger. *Id*. In the one block between Plaintiff's residence and Kroger is the home of Jason David Blankenship. *Id.* During three or four of Plaintiff's previous trips to Kroger, Mr. Blankenship, apparently intoxicated on each occasion, had "interrupted" Plaintiff's walks. *Id.* Plaintiff kept interactions with Mr. Blankenship brief and cordial. *Id.*

At roughly 7:30pm on March 17, 2017, Mr. Blankenship once again reached out to Plaintiff as he was walking to Kroger. *Id*. This time, however, Mr. Blankenship had two male friends with him. *Id*. Mr. Blankenship called out to Plaintiff, wanting Plaintiff to purchase beer for he and his two friends. *Id.* at ¶ 18; *PF&R*, at 3. Believing that the men were intoxicated, Plaintiff rebuffed Mr. Blankenship's proposal. *Id*. Apparently unhappy with Plaintiff's response, the three men descended from the porch on which they had been standing, and aggressively surrounded Plaintiff, insisting that he satisfy their request. *Id.* at ¶ 18-20; *PF&R*, at 3.

During the ensuing exchange of words, one of Mr. Blankenship's intoxicated friends punched Plaintiff in his right eye. *Id.* Fearing the increasingly physical nature of the disagreement, Plaintiff stood back and pulled a roughly six-inch long, unsheathed straight blade from his waistband. *Id.* The three aggressors, while staring beyond Plaintiff, began to back up simultaneously with the production of the knife. *Id*.

Plaintiff, turning to see what held the aggressors' attention, saw a Cabell County deputy on one knee, with his pistol aimed at Plaintiff, who instructed him to drop the knife. *Id.* at ¶ 21-22; *PF&R*, at 3. The deputy, who had been conducting his regular patrol of the Kroger parking lot, was roughly 20 feet away from the scuffling group when he saw the knife. *Id.*

Shortly thereafter, several Huntington Police Department cruisers had arrived at Mr. Blankenship's house. *Id.* While the police officers spoke with Mr. Blankenship and his two friends, officers handcuffed and frisked Plaintiff, then ordered him to sit in the back of a cruiser. *PF&R*, at 3. An officer took a photo of Plaintiff's black eye, but at no point did any officer interview Plaintiff about what happened. *Second Am. Compl.*, at ¶ 25-26; *PF&R*, at 3. Officers then transported Plaintiff back to the Huntington police station. *Id.* at ¶ 23; *PF&R*, at 3. Officers told Plaintiff that they did not see anything for which they could arrest Mr. Blankenship's group. *Id*. However, officers did notify Plaintiff that Mr. Blankenship had asked officers not to arrest Plaintiff. *Id.*; *PF&R*, at 4.

Plaintiff was presented before a county magistrate, who questioned the Huntington police officer about the arrest. *Compl.*, at ¶ 24; *PF&R*, at 4. The officer told the county magistrate that all the men involved in the confrontation were drunk, despite the fact that Plaintiff was not intoxicated. *Id*. Plaintiff was not given an opportunity to correct the inaccurate account given by the officer because the magistrate never elicited Plaintiff's version of events. *Id*. The magistrate

advised Plaintiff that he was being charged with misdemeanor brandishing, that he would be assigned a public defender, and that the magistrate had to send Plaintiff to jail. *Compl.*, at ¶ 25; *PF&R*, at 4. The magistrate set Plaintiff's bond at $5,000, a sum that Plaintiff could not afford. Plaintiff remained in jail for ten days, only gaining release when his 89-year-old aunt drove 80 miles to post Plaintiff's bond. *Compl.*, at ¶ 27; *PF&R*, at 4.

Although originally set for March 20, 2016, Plaintiff's preliminary hearing was rescheduled for May 19, 2016 because Mr. Blankenship and his cohort of friends initially failed to appear. *Compl.*, at ¶ 28; *PF&R*, at 4. At the May 19, 2016 preliminary hearing, Mr. Blankenship finally appeared and notified the magistrate that he did not wish to proceed with the charge against Plaintiff. *Id.* Upon this notification, the magistrate dismissed the charge.

## II. Standard of Review

This Court conducts a *de novo* review of those portions of the magistrate judge's proposed findings and recommendations to which a party objects. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."). The Court, however, is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).[1]

---

[1] Plaintiff does not contest the factual findings made by the Magistrate Judge. Instead, Plaintiff only objects to two of the Magistrate Judge's legal conclusions. Finding support in the record for the Magistrate Judge's factual conclusions, the Court adopts the factual findings relevant to Defendants' motions to dismiss as presented in the PF&R. *PF&R*, at 1-5. Likewise, finding support in the factual record and the applicable law, the Court adopts the legal conclusions of the Magistrate Judge to which no objections were made, and are not contradicted in this Memorandum Opinion and Order.

4

Plaintiff makes only two objections to the PF&R. Plaintiff claims that, (1) as a matter of law, the Defendants are not entitled to qualified immunity;[2] and (2) Judge Eifert should have recommended that this Court grant Plaintiff's request that Defendants Bills and Williamson be enjoined from employment in any law enforcement capacity anywhere in the United States. *Pl.'s Objs. to PF&R*, ECF No. 45, at 2-8. Having reviewed the objections, the PF&R, and the relevant facts and law, the Court agrees with the conclusions of the Magistrate Judge and will accept the recommendations.

**III. Discussion**

Regarding the first objection, the Magistrate Judge found that at this stage in the proceedings, on a motion to dismiss, it would be inappropriate to find that the officers were entitled to qualified immunity. *PF&R*, at 25-26. The Magistrate Judge recognized the Supreme Court's insistence that issues of qualified immunity be resolved at the earliest possible stage in the litigation. *Id.* (internal citations omitted). However, the Magistrate Judge concluded that where a court treats the factual allegations contained within the complaint as true on a motion to dismiss, Plaintiff has stated facts that present a plausible claim that Defendant Bills is not entitled to qualified immunity. *Id.* Plaintiff argues that the Magistrate Judge erred in reaching that conclusion because, he says, Judge Eifert did not go far enough. Plaintiff contends that the Magistrate Judge should have found that the officers were not entitled to qualified immunity as a matter of law. *Pl.'s*

---

[2] Defendants Bills and Ciccarelli both contended that they were entitled to the protection of qualified immunity. *PF&R*, at 23. However, Magistrate Judge Eifert concluded that Plaintiff failed to state a claim against Defendant Ciccarelli. Based upon that conclusion, Magistrate Judge Eifert analyzed the qualified immunity claim of only Defendant Bills. Plaintiff did not object to Magistrate Judge Eifert's conclusion that he had failed to state a claim against Ciccarelli. But, Plaintiff still contends that Magistrate Judge Eifert should have found that none of the defendants were entitled to qualified immunity protection as a matter of law. *Pl.'s Objs. to PF&R*, at 2-3. Because Plaintiff did not object to the conclusion that he failed to state a claim against Defendant Ciccarelli, this Court's analysis will focus upon Defendant Bills's claim for qualified immunity.

*Objs. to PF&R*, at 2-3. In other words, Plaintiff believes that no facts could be developed that would demonstrate that Defendant Bills is entitled to qualified immunity for his actions. Because Plaintiff advocates for a determination that is premature given the stage of this case, this Court rejects Plaintiff's argument.

Qualified immunity protects government officials from liability when "their conduct [in the course of performing discretionary functions] does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity seeks to protect officials from suit in cases of "bad guesses in gray areas." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). But qualified immunity will not protect officials who "transgres[s] bright lines," or who have acted "incompetently or have knowingly violated the law." *Id.*; *Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379, 395 (4th Cir. 2014) (internal quotation marks, internal citations, and internal alterations omitted). The concept "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Courts apply a two prong test to determine whether officials are entitled to the protection of qualified immunity: (1) do the facts illustrate that an officer violated a statutory or constitutional right ("violation prong"); and (2) was the right asserted clearly established at the time of the alleged violation ("clearly established prong"). *Pearson*, 555 U.S. at 232. The answer to both questions must be "yes" to defeat the officer's qualified immunity. *Humbert v. Mayor and City Council of Balt. City*, 866 F.3d 546, 555 (4th Cir. 2017). If the answer to either question is "no," then the default result occurs; the official will be entitled to immunity protection. A district court has

6

discretion address the questions in the order it determines is appropriate under the circumstances. *Pearson*, 555 U.S. at 236.

Dealing first with the violation prong, the Court must determine whether the facts demonstrate that the officers violated a right of Plaintiff. In this case, Plaintiff's right at issue is his Fourth Amendment right to be free of unreasonable seizures. *See Humbert*, 866 F.3d at 555 (providing that where plaintiff claimed that he was improperly arrested pursuant to an arrest warrant because there lacked probable cause, plaintiff's claim under §1983 was for unreasonable seizure under the Fourth Amendment). To be a reasonable arrest under the Fourth Amendment, law enforcement must have probable cause. *Smith v. Reddy*, 101 F.3d 351, 356 (4th Cir. 1996). Additionally, the Amendment "guarantee[s] a fair and reliable determination of probable cause as a condition for any significant pretrial restraint." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 917-18 (2017). A violation of that right can occur "when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Id.* at 918-19.

In this case, Plaintiff alleged a violation of his Fourth Amendment right in three related respects: (1) that the warrantless arrest on a misdemeanor charge was not supported by probable cause; (2) that the arresting officer made materially false statements to the county magistrate at presentment, which lead to a 10 day detention; and (3) that the arresting officer ignored exculpatory evidence.[3] *See generally Compl.* Based upon the face of the complaint, Plaintiff has stated enough that, if true, could plausibly establish that his Fourth Amendment right was violated.

At the core of his complaint, Plaintiff argues that Defendant Bills did not have probable cause to arrest him on a misdemeanor charge. However, Plaintiff also contends that Defendant

---

[3] A court should construe *pro se* filings liberally. *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Conforming to that liberal construction, the Court believes that Plaintiff's claim of a Fourth Amendment violation can be broken down into these three facets.

Bills provided materially false statements to the magistrate about the conditions of the parties and the circumstances surrounding the altercation.[4] Further, Plaintiff contends that the county magistrate relied on these false statements in finding probable cause and retaining Plaintiff in custody. Additionally, by failing to address Plaintiff's version of events, by ignoring questions raised by his obvious eye injury, and by not making clear that Mr. Blankenship did not believe Plaintiff should be arrested, Plaintiff alleges that Defendant Bills ignored facts that brought probable cause into doubt.

When considered in the context of the misdemeanor charge, the violative nature of these allegations is exacerbated. Under West Virginia law, probable cause to make a warrantless arrest for a misdemeanor only exists "when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that a misdemeanor *is being committed in his presence*." Syl. pt 1, *State v. Forsythe*, 460 S.E.2d 742, 743 (W. Va. 1995) (emphasis added); *see also* W. Va. Code § 62-10-6. Further, West Virginia courts have clarified that "in his [or her] presence" requires that that the officer perceive the criminal behavior through at least one of his or her senses. *See Forsythe*, 460 S.E.2d at 745. However, here an arresting officer, Defendant Bills, did not see, or otherwise perceive, the fight. Only the Deputy Sheriff witnessed any part of the altercation. Therefore, keeping Plaintiff in custody when the arresting officer did not perceive the underlying situation adds an additional potentially complicating factor to allegations of violated rights.[5] Despite the fact that he not perceive the events that gave rise to

---

[4] Plaintiff's complaint does not make clear which officer made the allegedly false statements to the county magistrate. However, this Court construes Plaintiff's pleadings liberally. *See Erickson*, 551 U.S. at 94. From his pleadings, it is reasonable to infer that Defendant Bills, as an arresting officer, was the officer referred to in the allegations regarding the falsity of statements made to the county magistrate.

[5] Note, however, that it may be possible under West Virginia law for one law enforcement officer who witnesses a crime to authorize a different law enforcement officer to effect an arrest.

8

Plaintiff's arrest, Defendant Bills appears to have given the only testimony upon which the magistrate made the probable cause finding.[6] But, because he did not witness the events, any fact about the altercation would have to have been relayed to Defendant Bills by the Deputy Sheriff. That means that any information Defendant Bills communicated to the county magistrate could not have occurred in his presence. Therefore, it appears, Defendant Bill's probable cause application relied upon the perceptions of others.

This lack of first-hand knowledge, combined with the allegations of falsity, provide a sufficiently probable claim that Plaintiff's rights were violated. If indeed Defendant Bills communicated materially false information, failed to observe or otherwise witness Plaintiff's actions that gave rise to the misdemeanor charge, or ignored exculpatory evidence, then Plaintiff could, in all likelihood, establish that his Fourth Amendment rights were violated. *See Manuel*, 137 S. Ct. at 918-19 (explaining a pretrial determination can violate the Fourth Amendment when "a judge's probable-cause determination is predicated solely on a police officer's false statements"); *Humbert*, 866 F.3d at 556 (describing conditions under which an arrest pursuant to a warrant may still be unsupported by probable cause and violate the Fourth Amendment where

---

In *State v. Stockton*, 124 S.E. 509 (1924), a justice of the peace witnessed a defendant chasing a woman with a rock in his hand. Observing that behavior, the justice of the peace authorized another individual to effect an arrest. 124 S.E., at 511. The West Virginia Supreme Court found that an observation of a misdemeanor by a justice of the peace—which was replaced with the magistrate system—was sufficient to justify the warrantless arrest by a law enforcement office. *Id*. The West Virginia Code provided, at the time, that if an offense was committed in the presence of a justice of the peace, he or she "may forthwith apprehend the offender or cause him to be apprehended." *Id.* (citing Code 1923, c. 50, § 221). However, currently the code only provides that if crime is committed in the presence of a law enforcement officer, that officer "may, without warrant or other process . . . arrest such offending person and take him before some justice." W. Va. Code § 62-10-6. Because it is unnecessary to decide whether one officer, because of her or his perception of a potential breach of the peace, can authorize another officer to make a warrantless arrest for a misdemeanor, the Court does not do so here.

[6] *See infra* note 4.

the warrant resulted from a materially false application by an officer who recklessly disregarded the truth); *Smith*, 101 F.3d at 357 (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)) (providing that the objective inquiry of qualified immunity accommodates allegations of falsity in officer's statements to a county magistrate, because "a reasonable officer cannot believe a warrant is supported by probable cause if the magistrate is misled by statements that the officer knows or should know are false); *McKinney v. Richland Cty. Sheriff's Dep't*, 431 F.3d 415, 418-19 (4th Cir. 2005) (alluding that although an officer's lack of a more thorough investigation did not negate probable cause in that case, if he had flatly ignored exculpatory evidence, then it may have risen to a negation of probable cause (citing *Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000) that "an officer may not disregard readily available exculpatory evidence")).

Regarding the second prong of the qualified immunity inquiry, the clearly established prong, the Fourth Circuit has instructed that when examining whether a right has been clearly established, a court must inspect the right in a specific context. *See McKinney*, 431 F.3d at 417-18. If the right had not been clearly established in the specific context that gave rise to the claim in the case at bar, then qualified immunity protects the officer from suit. *Id.* This examination requires a "case-by-case determination [about] whether it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation he [or she] confronted." *Swagler v. Neighoff*, 398 F. App'x 872, 877 (4th Cir. 2010) (per curiam) (internal quotation marks omitted) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)). This objective standard does not consider subjective factors such as "the officer's motives, intent, or propensities." *Smith*, 101 F.3d at 357.

Plaintiff's right to be free from the alleged violations was clearly established in March of 2016, when he was arrested. At the very least, courts in this circuit have provided both that (1) law enforcement cannot provide materially false statements to county magistrates on which to make a

probable cause determination, and (2) officers cannot disregard readily available exculpatory evidence. *See Smith*, 101 F.3d at 357 (decided in 1996); *see also Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000). Based upon these decade old cases in the specific context of a probable cause determination, Plaintiff's rights were clearly established when he was arrested. The reasonable officer would clearly know that she or he cannot make materially false statements to a county magistrate for a probable cause determination, and cannot simply ignore exculpatory evidence that is looking him or her squarely in the face. Thus, Plaintiff's allegations, at this stage, present sufficient grounds on which to deny qualified immunity. However, as a factual record is developed, it may later be appropriate to alter that result.

The United States Supreme Court has made clear that a ruling on qualified immunity should be made early in the proceedings. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Qualified immunity acts "as an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Therefore, the entitlement to the immunity is "effectively lost if a case is erroneously permitted to go to trial." *Id.*

But where qualified immunity is presented in a Rule 12(b)(6) motion, "the defense faces a formidable hurdle and is usually not successful." *Owens*, 767 F.3d at 396 (internal quotation marks omitted) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006)). Only if the plaintiff fails to state a plausible claim on its face, may a Court dismiss a claim under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). But the Court will not dismiss a complaint where the plaintiff supplies sufficient detail regarding the claim to demonstrate a "more-than-conceivable chance of success on the merits." *Owens*, 767 F.3d at 396 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006)). Applying that standard to this case, it must be apparent on the face of the complaint that the officer is entitled to qualified immunity. But, from the facts

alleged, Plaintiff could plausibly demonstrate the officer violated a clearly established right, and thus is not entitled to the protective cloaking of qualified immunity, at this stage.

This does not mean, however, that Plaintiff's objection is correct. Plaintiff's contention that qualified immunity should be denied as a matter of law fails to persuade this Court. Consistent with the applicable standard for a motion to dismiss, this Court has assumed the factual allegations in Plaintiff's complaint are true. To rule, as Plaintiff wants, that, based upon that assumption of truth, the officer is stripped of his qualified immunity protection would be a fool's errand. That simply would not comport with the sound reasoning and judgment that is required of this Court. Having rejected Plaintiff's first objection, the Court turns to Plaintiff's second objection.

In his second objection, Plaintiff argues that Magistrate Judge Eifert erred in not grating the injunction he requested against Defendants Bills, Williamson, and Ciccarelli. *Pl.'s Objs. to PF&R*, at 3-8; *see also Compl.*, at ¶ 46. Plaintiff maintains that the necessity for this injunction hinges upon the safety of himself, and "the safety of all Americans who may be subjected to the acts of these [officers.]" *Id.* at 6. Like with his first objection, Plaintiff misses the mark with his second objection.

In order to for a court to enjoin future action, a plaintiff must demonstrate that he or she "is immediately in danger of sustaining some direct injury as the result of the . . . conduct." *Beck v. McDonald*, 848 F.3d 262, 277 (4th Cir. 2017) (internal quotation marks omitted) (quoting *Lebron v. Rumsfeld*, 670 F.3d 540, 560 (4th Cir. 2012)). This threat of injury must be "'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (internal citations omitted). Although past illegal conduct is evidence relevant to the reality and immediacy of a threatened injury, the mere fact that a past injury occurred does not conclusively establish the danger necessary for a Court to grant an injunctive request. *Suhre v. Haywood Cty.*,

131 F.3d 1083, 1091 (4th Cir. 1997) (citing *Lyons*, 461 U.S. at 102 and *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210-11 (1995)).

Plaintiff has failed to demonstrate the type of "real and immediate" threat necessary to confer standing on his claim for injunctive relief. Plaintiff has provided only that his general safety, and "the safety of all American who *may* be subjected to the acts of these [officers]" justifies enjoining their future employment as law enforcement. *Pl.'s Objs. to PF&R*, at 6 (emphasis added). But, Plaintiff has not provided any allegations in his pleadings that support that encounters with these officers are sufficiently likely to occur anytime in the future. *See Lyons*, 461 U.S. at 111. Plaintiff substantiates his alleged threat of injury only with conjecture of a fleeting possibility. Simply requesting that potential wrong-doers be enjoined, absent a sufficient indication of certainty, puts the cart before the horse. Because of this, the Court finds that Plaintiff has failed to demonstrated the required threat of injury needed in order to confer standing on his claim for injunctive relief.[7]

### IV. Conclusion

Accordingly, for the foregoing reasons, this Court **GRANTS, IN PART**, and **DENIES, IN PART** the Motions to Dismiss (ECF Nos. 14, 24) as follows:

> **DENIES, IN PART**, the Motions to Dismiss of Defendants the City of Huntington and Shane Bills;
>
> **GRANTS, WITHOUT PREJUDICE** the Motion to Dismiss of Defendant Joseph Ciccarelli; and

---

[7] Because Plaintiff has failed to satisfy the requirements for this Court to entertain his demand for an injunction, there is no need address whether his proposed injunction is too board in scope or nature. *See PF&R*, at 27; *Pl.'s Objs. to PF&R*, at 5-6.

**GRANTS** the Motion to Dismiss regarding the claim for injunctive relief that seeks to enjoin the defendants from future employment as law enforcement.

Having found support in the record for the remainder of Magistrate Judge Eifert's PF&R, the Court **ADOPTS** the remainder of the PF&R, to the extent that it is not contradicted herein.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unpresented parties.

ENTER: November 2, 2017

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE