**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**HARRY LAWRENCE QUIGLEY,**

     **Plaintiff,**

**vs.**                                       **CIVIL ACTION NO. 3:17-CV-01906**

**CITY OF HUNTINGTON, WEST VIRGINIA,**
**SHANE BILLS, CASEY WILLIAMSON,**
**JOEY KOHER, JASON SMITH, and**
**JAMES TALBERT,**

     **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' ***Motion for Summary Judgment*** and supporting ***Memorandum of Law***. (Document Nos. 61 and 62.) By Order entered on September 29, 2017, this matter was transferred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 40.) Having examined the Second Amended Complaint (Document No. 33.) and considered the pleadings as well as pertinent legal authority, the undersigned concludes that Defendants' ***Motion*** should be **GRANTED**.

## PLAINTIFF'S FACTUAL ALLEGATIONS

The background of this case concerns events occurring on March 17, 2016 when Plaintiff, then sixty-eight years old, took a routine walk to a Kroger supermarket from his apartment in Huntington, West Virginia. Frequently during these walks, Plaintiff would interact with an individual named Jason David Blankenship who lived near Kroger; Plaintiff kept his interactions with Mr. Blankenship brief, yet cordial, as Mr. Blankenship usually appeared inebriated. Around 7:30 p.m. on March 17, 2016, Plaintiff was walking to Kroger when Mr. Blankenship presented

money and asked Plaintiff to purchase beer for him and his two male companions. Plaintiff, who was not intoxicated or had consumed any alcohol that evening, observed that the men appeared to be intoxicated and refused to purchase beer for them. After an exchange of words, Mr. Blankenship and his companions descended from his porch and surrounded Plaintiff in the front yard. One of Mr. Blankenship's companions, later known to be Jason Townson, punched Plaintiff in the eye, and Plaintiff responded by pulling a knife on Mr. Townson. Mr. Townson and the other two individuals began to back away from Plaintiff when a law enforcement officer[1] arrived, drew his firearm, and instructed Plaintiff to drop the knife. Plaintiff complied as directed by the law enforcement officer.

Plaintiff was handcuffed by the time additional law enforcement officers from the Huntington Police Department arrived on scene. One of the Huntington officers obtained a statement from Mr. Townson, who reported that Plaintiff threatened to stab him with a knife, so he hit Plaintiff in the face. No officer interviewed Plaintiff or asked him for his version of events. None of the other three individuals were arrested that evening, however, Plaintiff was arrested for brandishing and spent ten days in jail before posting bond. After twice appearing at magistrate court, the charge was dismissed because the alleged victim did not wish to proceed with the matter.

## PROCEDURAL HISTORY

On March 16, 2017, Plaintiff, *pro se*,[2] filed a two-count civil Complaint against Defendants City of Huntington, Huntington Police Department[3], and Huntington police officers Shane Bills

---

[1] Whether the initial responding officer at the scene was a Cabell County deputy sheriff or a Huntington Police officer is a matter of debate: Plaintiff insists this unnamed individual is a member of the Cabell County Sheriff's Department who frequently patrols the Kroger parking lot. Defendants have submitted documentation that indicates the initial responding officer was Defendant Bills with the Huntington Police Department. (Document No. 61-5 at 4.)

[2] Because Plaintiff is acting *pro se*, the documents he has filed in this case are held to a less stringent standard than had they been prepared by a lawyer, therefore, they are construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-521 (1972).

[3] Plaintiff "deleted" Huntington Police Department as a Defendant in his First Amended Complaint filed on May 4, 2017. (Document No. 19.)

and Joseph Ciccarelli for unconstitutional arrest, pretrial confinement, and prosecution. (Document No. 2.) Defendants filed their motion to dismiss (Documents No. 14 and 24.)[4] On September 12, 2017, Plaintiff filed his Second Amended Complaint, adding Defendants Casey Williamson, Joey Koher, Jason Smith, and James Talbert, police officers employed by the City of Huntington. (Document No. 33.)

As noted *supra*, on February 16, 2018, Defendants filed their ***Motion*** with an accompanying ***Memorandum*** of law. (Document Nos. 61 and 62.) Defendants also attached several Exhibits to their Memorandum, which included copies of Plaintiff's Second Amended Complaint, Plaintiff's 26(a)(2)(A), (B), and (C) Disclosures, Plaintiff's deposition transcript, which was taken on January 19, 2018, the Huntington Police Department Statement Form concerning the statement obtained from Mr. Jason Townson on March 17, 2016 at 7:30 p.m., and the CAD Call Information report concerning the criminal matter subject to this lawsuit. (Document Nos. 61-1, 61-2, 61-3, 61-4, and 61-5, respectively.) Subsequently, the undersigned issued a Roseboro notice[5] to Plaintiff directing him to file his response to Defendants' ***Motion***. (Document No. 19.) Plaintiff has since filed his ***Opposition*** to Defendants' ***Motion*** and Defendants have filed their ***Reply in Support of Motion for Summary Judgment and Motion to Strike***. (Document Nos. 64 and 65.) Accordingly, this matter is fully briefed and ready for resolution.

### Defendants' Argument in Support of Motion for Summary Judgment

The Defendants assert the following facts elicited from the Plaintiff's deposition are material to the Plaintiff's arrest for brandishing, and contend that they are undisputed. Defendants

---

[4] On November 2, 2017, the District Court adopted Magistrate Judge Eifert's Proposed Findings and Recommendations that Defendant Joseph Ciccarelli be dismissed from these proceedings and that Plaintiff's claim for injunctive relief enjoining Defendants from future employment as law enforcement officers be dismissed. (Document Nos. 38 and 49.)

[5] Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975); because Plaintiff is acting *pro se*, the Court issued its Order notifying Plaintiff of his right to file a response to Defendants' Motion and further ordered that Plaintiff file any response with the Clerk of this Court. (Document No. 63.)

further assert that probable cause supported Plaintiff's arrest:[6]

(a)    Plaintiff was located in the front yard of a private residence. See Deposition Transcript of Harry Lawrence Quigley, Exhibit C, at pp. 20-21, lines 7-7. (Document No. 61-3 at 6.)

(b)    While located in the yard, Plaintiff was holding an unsheathed Wilderness Series Razorback knife with a 5.5 inch blade ("the knife"). Exhibit C at p. 7, lines 3-10; p. 10, lines 7-17. (Id. at 3 and 4.)

(c)    Plaintiff was holding the knife at shoulder level with the blade pointed toward another individual. Exhibit C, at p. 11, line 5. (Id. at 4.)

(d)    Plaintiff was holding the knife per his "military-trained knife defense against physical assault," which includes turning the knife slightly to the side, "parallel to the carotid" artery and "positioned like someone getting ready to take a swing." Exhibit C, at p. 11, lines 1-9; p. 24, lines 1-24. (Id. at 4 and 7.)

(e)    Contemporaneous therewith, the individual whom Plaintiff was pointing his knife had his arms down to his side and was "inching" backwards away from Plaintiff while motioning other individuals to do the same.  Exhibit C, at p. 29, lines 5-15. (Id. at 8.)

The Defendants summarize that these observable facts, as presented to law enforcement upon their arrival on the scene of this incident, are not in dispute. Exhibit C, at p. 29, lines 6-14. (Id.; Document No. 62 at 2-3.)

The Defendants next provide the "immaterial disputed and/or background facts" that

---

[6] The undersigned has reproduced Defendants' recitation of these facts *verbatim* from their **_Motion_** in order to set forth the facts that they contend to be material and undisputed for the sake of efficiency and clarity.

precipitated the Plaintiff's arrest that were also elicited from the Plaintiff during his deposition:[7]

1.      On March 17, 2016, Plaintiff was walking from his apartment to Kroger's to purchase beer. Exhibit C, at p. 18, lines 4-12. (Document No. 61-3 at 6.)

2.      As he was walking, he began having a conversation with three individuals located on a residential porch adjacent to his path of travel. Exhibit C, at pp. 18-19, lines 20-15. (Id.)

3.      According to Plaintiff, these individuals requested that he also purchase beer for them at Kroger's. He refused because he was limited on time to meet for a date. Exhibit C, at p. 19, lines 12-15. (Id.)

4.      An argument ensued. The individuals allegedly remarked that Plaintiff did not have a date and Plaintiff allegedly responded, "I am going to Kroger's, and you can stick those comments up your ass, you son-of-a-bitch." Exhibit C, at pp. 19-20, lines 24-6. (Id.)

5.      At the time of this verbal exchange, Plaintiff was now located in the front yard of this residence "approximately an arm's length away from the porch banister." Exhibit C, at pp. 20-21, lines 7-7. (Id.)

6.      The individuals then allegedly walk down the porch steps and took a fighting posture. Exhibit C, at pp. 20-21, lines 18-7. (Id.)

7.      At this point, Plaintiff alleges that one of the individuals punched him in the face to which he responded by pulling the knife. Exhibit C, at p. 22, lines 6-22. (Id. at 7.)

8.      The individual in question disputes this rendition of the facts. He states that Plaintiff "pulled a boot knife out and threatened to stab me so I hit him in the face." See HPD Statement of Jason Townson, attached hereto and incorporated herein as Exhibit D. (Document

---

[7] As with the facts asserted to be material and undisputed, the undersigned also reproduced, *verbatim*, Defendants' recitation of the facts asserted to be immaterial for the sake of efficiency and clarity.

No. 61-4.)

9.      Nevertheless, Plaintiff confirms that the individuals "absolutely immediately froze when I brandished the knife." Exhibit C, at p. 28, lines 13-14. (Document No. 61-3 at 8.)

10.     Plaintiff then held the brandished knife in his combat position for "probably ten seconds." Exhibit C, at p. 28, lines 18-21. (Id.)

11.     A patrolling law enforcement officer then happened upon the scene, described *supra*, and observed Plaintiff located in the front yard of a private residence, holding an unsheathed knife at shoulder level with the blade pointed toward another individual. The Plaintiff was in some type of combat stance with the knife turned slightly to the side, "parallel to the carotid" artery and was "positioned like someone getting ready to take a swing." Plaintiff was maintaining this position (he had held this position for "probably 10 seconds") as the individual whom Plaintiff was pointing his knife had his arms down to his side and was "inching" backwards away from Plaintiff.

12.     The officer exited the patrol car, drew his firearm on Plaintiff and demanded that he "drop the knife" to which Plaintiff complied. Exhibit C, at p. 29, lines 12-23. (Id.) The Plaintiff confirms that this officer "done everything perfectly." Exhibit C, at p. 29, lines 17-18. (Id.) The Plaintiff is not making any claims that "excessive force" was used against him. Exhibit C, at p. 57, lines 8-22. (Id. at 15.)

13.     Plaintiff contends that this officer was a Cabell County Deputy Sheriff. Exhibit C, at p. 29, lines 13-14. (Id. at 8.) Defendant asserts that Defendant HPD Officer Shane Bills was actually the responding officer that Plaintiff testified "did everything perfectly" and shows that the CAD sheet for this incident, Officer 30B (Shane Bills), was dispatched, on scene and assigned as primary at exactly the same time: 19:19:27 or 7:19 pm. See CAD Sheet, at page 5, Exhibit E. (Document No. 61-5 at 4.) This is the same time in which Plaintiff admits that the incident

occurred. Exhibit C, at pp. 6-7, lines 24-2. (Document No. 61-3 at 3.) These things are not listed simultaneously on a CAD sheet unless an officer calls in an incident such as this.

14.    Plaintiff was arrested and charged with a violation of Section 61-7-11 of the West Virginia Code, entitled "Brandishing deadly weapons; threatening or causing breach of the peace; penalties" which provides:

> It shall be unlawful for any person armed with a firearm or other deadly weapon, whether licensed to carry the same or not, to carry, brandish or use such weapon in a way or manner to cause, or threaten, a breach of the peace. Any person violating this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than fifty nor more than one thousand dollars, or shall be confined in the county jail not less than ninety days nor more than one year, or both.

See W. Va. Code § 61-7-11 (1994).

15.    Ultimately, the charge was dismissed because the victim did not wish to press charges.

In support of the second ground supporting their motion for summary judgment, the Defendants argue that they are entitled to qualified immunity for all claims the Plaintiff has levied against them because the officers' conduct did not violate the Plaintiff's statutory or constitutional rights. (Id. at 11-14.)

**Plaintiff's Opposition to Defendants' Motion for Summary Judgment**

In response to Defendants' ***Motion***, Plaintiff argues that as stated in his original Complaint and Amended Complaint: "at no point in this entire matter did any cop ask me for a statement of facts or mitigating or exculpatory circumstances, such as self-defense", and "[a]t no point in the entire process from physical encounter to incarceration did any cop introduce himself to [Plaintiff] or ask for a statement of precipitating facts." (Document No. 64 at 8.) Plaintiff further contends that genuine issues of material facts are demonstrated by the contents of the letters Plaintiff

received from the United States Department of Justice, Civil Rights Division (Document No. 64-2.) and from Dolance Law Office, PLLC.[8] (Document No. 64-3.)

In addition, Plaintiff asserts that there are genuine disputes of material fact and directs the Court's attention specifically to his deposition transcript[9] that has been attached as Exhibit C to the Defendants' ***Memorandum of Law in Support of Motion for Summary Judgment***. (Document No. 64 at 10.) Plaintiff points to his deposition testimony as proof of genuine disputes of material fact that bars summary judgment:

> At no point did any cop introduce himself to me. At no point. On scene at Krogers, Huntington Police Department, magistrate court, all the riding around, at no point . . . No cop asked me for an explanation of events. And with those failures under the law, which I state in my submissions, there was no reasonable basis to have made that arrest without a reasonable investigation under the law. There's no probable cause to make the arrest. And without probable cause, there is no immunity.

Deposition of Harry Lawrence Quigley, January 19, 2017, Page 111-112, lines 21-24, lines 1-8. (Document No. 61-3 at 29.)

Plaintiff then asserts his "rebuttals" to each of the alphabetically denominated material facts as asserted by Defendants:

(a) Plaintiff states that when the Cabell County Sheriff's Deputy arrived at the "scene of the skirmish", Plaintiff was "in a frozen scene holding a 5.5 inch fixed blade knife pointed toward the middle man of three assailants" while "in Blankenship's yard with Blankenship's consent." (Document No. 64 at 11-12.) Plaintiff explains that the three inebriated men summoned him to have him buy them beer at Kroger, and upon

---

[8] It is noted that the letter from the Department of Justice ("DOJ") is dated September 27, 2016 and appears to be in response to Plaintiff's allegations of civil rights violations that concern the matters *sub judice* (See Document No. 2-5.), however, the letter does not indicate that any action was to be taken by the DOJ. Additionally, the letter from the private law firm, Dolance Law Office, dated March 8, 2017, indicated that the law firm was unable to assist Plaintiff with regard to his potential claims.

[9] Plaintiff references pages 111-113, beginning at line 21 on page 111. (Document No. 61-3 at 29.)

Plaintiff's refusal to do so, the middle man assailant "blasted [Plaintiff's] right eye with his left fist." (<u>Id</u>.) In response, Plaintiff drew his knife as he was entitled to stand his ground under W. Va. Code § 55-7-22. (<u>Id</u>. at 12.) Plaintiff disputes Defendants' contention that upon arrival by Huntington police officers that he was in Blankenship's yard, he had already been handcuffed by the Cabell County deputy sheriff, and standing in the Kroger parking lot – only the Cabell County deputy sheriff actually witnessed Plaintiff in Blankenship's yard. (<u>Id</u>. at 12-13.) Additionally, while Plaintiff is uncertain whether it was officer Bills or Williamson who transported him in the backseat of a cruiser, Plaintiff asserts that the officer admitted the other three assailants would not be arrested because the officer did not "see anything." (<u>Id</u>. at 13.)

(b) In response to this alleged fact, again, Plaintiff disputes that any Huntington police officer observed him holding the knife, a Cabell County deputy sheriff did, and further, Plaintiff complied with the deputy's order to drop the knife. (<u>Id</u>. at 13-14.) Plaintiff was already handcuffed by the time Huntington officers arrived on scene, and therefore, Plaintiff contends that Defendants' characterization of this fact as "material" and undisputed is false. (<u>Id</u>. at 14.) Additionally, Plaintiff queries why the Huntington police officers failed to perform a proper investigation upon their arrival and directs the Court's attention to the letter Plaintiff wrote to the DOJ, *supra*. (<u>Id</u>.)

(c) Plaintiff again disputes that any Huntington police officers observed him holding the knife, and again states this is an immaterial fact, but also because Huntington police officers did not follow up with a reasonable investigation, a jury can find that there was no probable cause for Plaintiff's arrest. (<u>Id</u>. at 15-16.)

(d) Plaintiff reasserts his arguments regarding Defendants' alphabetically denominated

facts (a) through (c); these are disputed immaterial facts and will not support a motion for summary judgment. (<u>Id</u>. at 16.)

(e)  Plaintiff restates his arguments as described *supra*. (<u>Id</u>. at 17-18.)

Plaintiff next addresses each of the enumerated facts as asserted by Defendants in support of their ***<u>Motion</u>***, however, Plaintiff contends that facts numbered 7, 8, and 11 are "material" facts. (<u>Id</u>. at 18.)

1.  Plaintiff admits this fact. (<u>Id</u>. at 18-19.)

2.  Plaintiff admits this fact. (<u>Id</u>. at 19.)

3.  Plaintiff asserts that this fact is partially true and partially false and directs the Court's attention to the Statement of Facts in his Second Amended Complaint that supplements Defendants' recitation of these facts. Plaintiff asserts that Kroger had declined to sell beer to the three individuals many times because they were "already obviously drunk", and Plaintiff believed the three individuals were either short on money or were worried about being arrested for public drunkenness if they went to Kroger themselves to purchase more beer. (<u>Id</u>. at 19-20.)

4.  Plaintiff admits this fact, however, states that Defendants' omission of the contextual details is "an attempt to paint a character image" of Plaintiff. Plaintiff asserts that it was Matthew Duane Ramsey, one of the three "glassy-eyed" drunks who shouted to Plaintiff when he declined to purchase more beer for them, "He ain't got no goddamned date; he ain't goin' to no goddamned Kroger." (<u>Id</u>. at 20-21.)

5.  Plaintiff admits this fact. (<u>Id</u>. at 21.)

6.  Plaintiff describes how the three assailants "raced from the porch to the grass and encircled" him. Plaintiff asserts that later, Defendant Bills or Defendant Williamson

advised the county magistrate, "They were all drunk." (<u>Id</u>. at 21-22.)

7. Plaintiff admits this fact, but asserts that this fact is "material" and would move a judge or jury to reasonably conclude that Plaintiff acted in self-defense. (<u>Id</u>. at 22.)

8. Plaintiff asserts that Defendants' use of Jason Townson's statement is a "red herring" and distracts the Court from the material issue: that Huntington law enforcement failed to conduct a reasonable investigation, by obtaining statements from the other witnesses at the scene, and would have known that they had no probable cause to arrest Plaintiff. (<u>Id</u>. at 23-24.) Plaintiff states that no Huntington police officer asked him what had happened prior to him pulling his knife, despite the fact that law enforcement observed Plaintiff had a black eye. (<u>Id</u>. at 24.) Specifically, Plaintiff identifies Defendant Bills exclaimed, "Man, you got a shiner!" on scene at Kroger's, but did not ask Plaintiff any questions about it. (<u>Id</u>.) Plaintiff further states that Defendants took "several photographs" of his black and swollen eye, both on scene at Kroger's, then at the Huntington Police Headquarters. (<u>Id</u>.) Had a reasonable investigation been performed, Defendants would have realized Plaintiff's rights had been violated; because these facts are disputed and material, Defendants' ***<u>Motion</u>*** cannot stand. (<u>Id</u>. at 25.) Finally, Plaintiff states that Mr. Townson was a 39-year old man, standing 6-feet tall and weighing 170 pounds from information that Plaintiff found online from a mugshot of Mr. Townson taken in 2012; Plaintiff reasserts that only after Mr. Townson "fisted" him in the face did Plaintiff brandish his knife. (<u>Id</u>.)

9. Plaintiff contends that his statement that the three individuals froze would show a judge or jury that Mr. Townson's statement that Plaintiff pulled his knife, and then Mr. Townson hit him is untrue. (<u>Id</u>. at 25-26.)

10. Plaintiff admits this fact, however, he disputes that "an observant female witness could call 911 and generate the arrival on scene of Huntington cops in such reality-defying speed that" Defendant Bills observed Plaintiff "waving a knife." Plaintiff argues that it was a Cabell County deputy that observed Plaintiff holding his knife to his attackers, not Defendant Bills. (Id. at 26-27.)

11. Plaintiff disputes this fact, reasserting that no Huntington law enforcement officer observed the scene leading up to and including Plaintiff holding his knife during the confrontation with the three assailants; he reasserts that the Cabell County deputy observed Plaintiff holding his knife during the confrontation with the three assailants. (Id. at 27-28.)

12. Plaintiff commends how the Cabell County deputy handled the skirmish and again asserts that the Huntington police officers conducted no investigation, therefore they had no probable cause, thus no qualified immunity. (Id. at 28-29.)

13. Plaintiff disputes that Huntington police officer Defendant Shane Bills was the first law enforcement officer on the scene and asserts that law enforcement was not called to the scene by 911, but was a result of the Cabell County deputy sheriff patrolling the Kroger parking lot. (Id. at 39-31.)

14. Plaintiff agrees he was charged with brandishing, but asserts that his arrest was without probable cause, and states that because Huntington police officers failed to conduct a reasonable investigation and determine what had happened, Plaintiff's arrest and subsequent incarceration violated his Constitutional rights. (Id. at 31-32.)

15. Plaintiff disputes the fact that the charge was dismissed because the victim did not want to press charges, but states that the prosecuting attorney was wise to dismiss this

"rubbish." (Id. at 32-34.)

Plaintiff argues that the Huntington police officers failed to perform a reasonable investigation into the matters that transpired between Plaintiff and the three assailants, which would have demonstrated there was no probable cause for Plaintiff's arrest, subsequent incarceration, and ultimately leading up to the dismissal of the brandishing charge. (Id. at 34-38.) Plaintiff contends that the Huntington police officers were unreasonable insofar as they charged Plaintiff with brandishing, although upon investigation, they would have determined that Plaintiff was exercising his right to defend himself, as he himself had not been engaged in any criminal activity when accosted by the three assailants. (Id. at 36-37.) Plaintiff states that these facts defeat Defendants' *__Motion__*. (Id. at 38-40.)

### Defendants' Reply in Support of Motion for Summary Judgment and Motion to Strike

To the extent that Plaintiff's *__Opposition__* serves to modify or supplement his prior deposition testimony to create a material issue of fact to contradict his prior deposition testimony, Defendants request this Court to enter an order striking such portions from the record.[10] (Document No. 65 at 1-2.) Defendants contend that Plaintiff's argument that probable cause did not exist for his arrest because law enforcement failed to introduce themselves and request a statement of mitigating or exculpatory circumstances is simply not a requirement under the law.[11] (Id. at 2-4.) Because law enforcement observed Plaintiff in a private yard holding a knife pointed at another individual who was backing away from Plaintiff and was motioning two other

---

[10] Buckner v. Sam's Club, 75 F.3d 290 (7th Cir. 1996) (citing Russell v. Acme-Evans Company, 51 F.3d 64, 67-68 (7th Cir. 1995); Diliberti v. United States, 817 F.2d 1259, 1263 (7th Cir. 1987); Babrocky v. Jewel Food Co., 773 F.2d 857, 861-862 (7th Cir. 1985); Adelman-Tremblay v. Jewel Companies, Inc., 859 F.2d 517, 520-521 (7th Cir. 1988)). (Document No. 65 at 1-2.)

[11] Smith v. Munday, 848 F.3d 248, 254 (4th Cir. 2017) ("an investigating officer need not exhaust every potential avenue of investigation.") (citing Wadkins v. Arnold, 214 F.3d 535, 543 (4th Cir. 2000)); Miller v. Prince George's County, 475 F.3d 621, 630 (4th Cir. 2007) (law enforcement is "not required to exhaust every potential exculpatory lead or resolve every doubt to show probable cause.") (Id. at 2-4.)

individuals to do the same, observations corroborated by a victim's statement, law enforcement had sufficient probable cause to arrest Plaintiff for brandishing. (Id. at 4-5.) Even assuming Plaintiff's claims of self-defense were true, law enforcement was still under no obligation to exhaust every potential exculpatory lead or resolve every doubt to show probable cause per this Circuit's jurisprudence. (Id. at 5.)

Defendants alternatively assert the defense of qualified immunity because Plaintiff's arrest was not "plainly incompetent" or in "knowing violation of the law."[12] (Id. at 5-6.)

Defendants ask for summary dismissal from this civil action. (Id. at 6.)

## THE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 -87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party

---

[12] See Malley v. Briggs, 475 U.S. 335, 341 (1986); White v. Pauly, 137 S.Ct. 548, 551 (2017).

on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. <u>Shealy v. Winston</u>, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." <u>Mitchell v. Data General Corp.</u>, 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure provides that

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: [] citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]

Accordingly, the undersigned finds that the Exhibits attached to Plaintiff's pleadings as well as the Exhibits referenced by Defendants in their motion may be properly considered for purposes of a motion for summary judgment.

## <u>DISCUSSION</u>

Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

A plaintiff's claim for false arrest or false imprisonment ceases once plaintiff is detained pursuant to legal process, and at this point, plaintiff's claim becomes a claim of malicious prosecution. See Wallace v. Kato, 549 U.S. 384, 388-89, 127 S.Ct. 1091, 1100, 166 L.Ed.2d 973 (2007) ("Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process - - when, for example, he is bound over by a magistrate or arraigned on charges . . . Thereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process.")(internal citations omitted). In the context of a claim for malicious prosecution, the Fourth Circuit recognizes that an appropriate Section 1983 claim is "a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution." Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000), cert. denied, 531 U.S. 1130, 121 S.Ct. 889, 148 L.Ed.2d 797 (2001)(citing Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996)); see also Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012)(finding that a Section 1983 malicious prosecution claim "is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort."). To state a Section 1983 claim for a seizure in violation of the Fourth Amendment, the defendant must have "seized plaintiff pursuant to legal process that was not supported by probable cause and the criminal proceeding [must] have terminated in plaintiff's favor." Burrell v. Virginia, 395 F.3d 508, 514 (4th Cir. 2005)(citing Brooks, 85 F.3d at 183-85)).

## Probable Cause

As noted *supra*, the primary issue this Court must determine is whether probable cause existed at the time the Defendant police officers placed Plaintiff under arrest. Probable cause is

determined by a "totality-of-the-circumstances" approach. <u>Illinois v. Gates</u>, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Fourth Circuit has held "[i]t is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker" because "it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself." <u>Torchinsky v. Swiniski</u>, 942 F.2d 257, 262 (4th Cir. 1991); <u>see also</u> <u>United States v. Beckham</u>, 325 F.Supp.2d 678, 687 (E.D.Va.2004) ("Particularly relevant here is the principle that a finding of probable cause may be based on information provided by a victim or eyewitness to a crime, as 'it is well-established that [w]hen an officer has received . . . information from some person – normally the putative victim or an eye witness – who it seems reasonable to believe is telling the truth, he has probable cause.' " (quoting <u>Spiegel v. Cortese</u>, 196 F.3d 717, 724 (7th Cir. 1999))). Therefore, a victim's statement will constitute sufficient probable cause unless there is an apparent reason for the officer to believe the victim is lying. <u>See</u> <u>Beckham</u>, 325 F.Supp.2d at 687 (quoting <u>Ahlers v. Schebil</u>, 188 F.3d 365, 370 (6th Cir. 1999)).

Stated simply, the Defendants contend that the undisputable facts are that Defendant Bills, while on patrol, observed Plaintiff in the front yard of a private residence holding a knife at shoulder level with the blade pointed at another individual. This individual, along with two others, was slowly backing away from Plaintiff with his arms down by his side. Defendant Bills instructed Plaintiff to drop the knife, and Plaintiff complied, afterwards, Plaintiff was placed in handcuffs. At the scene, Defendant Smith obtained a written statement from Jason Townson, who reported that Plaintiff "pulled a boot knife out and threatened to stab me so I hit him in the face." (Document

No. 61-4.) It is from these facts that Defendants claim probable cause supported Plaintiff's arrest for brandishing.

"Probable cause to make a misdemeanor arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that a misdemeanor is being committed in his presence." Syl Pt. 2., State v. Davisson, 547 S.E.2d 241 (W. Va. 2001).

Given the facts known to the Defendants upon their arrival at the scene, it appears that under the totality of circumstances, there was probable cause to arrest Plaintiff for the misdemeanor offense of brandishing. Although there is a dispute as to whether a Cabell County deputy sheriff actually observed Plaintiff holding the three individuals at knifepoint, this unnamed deputy remains unidentified. However, this disputed fact does not rise to a material issue: whether it was a deputy sheriff or Defendant Bills who observed Plaintiff holding the three individuals at knifepoint does not affect the outcome of this case. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S.Ct. at 2510. In other words, the particular circumstances surrounding Plaintiff's arrest is unaffected by the identity of the law enforcement agent that initially observed the standoff in the private yard; that factual dispute is irrelevant to the genuine issue of probable cause given the circumstances at bar. Additionally, as set forth *supra*, Plaintiff may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Baber v. Hosp. Corp. of Am., 977 F.2d at 874-875. Plaintiff has merely restated his belief that it was a Cabell County deputy sheriff who did "everything perfectly", but provided no specific facts to defeat Defendants' properly supported motion in this particular context, despite having had ample opportunity for discovery. Indeed, Defendants provided a copy of the CAD sheet that indicates Defendant Bills was the first law enforcement agent on the scene, at 19:19:27 (7:19:27 p.m.),

followed by Defendant Smith, who arrived on scene at 19:20:12 (7:20:12 p.m.), followed by Defendant Koher at 19:24:24 (7:24:24 p.m.), and finally, by Defendant Williamson, who arrived on scene at 20:28:17 (8:28:17 p.m.), who subsequently transported Plaintiff to the magistrate's office and then to jail. (Document No. 61-5 at 3-4.) The CAD sheet also indicates that Defendant Talbert was never at the scene, but remained at Huntington Police headquarters. (Id. at 4.) Moreover, this disputed fact is not "genuine" insofar as there is no probative evidence concerning which law enforcement agency was the first on the scene that presents an issue requiring a jury to resolve. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S.Ct. at 2510.

With respect to Defendant Talbert, there are no specific allegations against him, and no allegation that he was present at the scene. Indeed, as stated *supra*, the CAD sheet indicates that he was not on the scene, but at headquarters. Further, there has been no specific allegations as to what extent he may have been involved in photographing Plaintiff's eye and/or fingerprinting him while at the Huntington Police Department. Moreover, Plaintiff testified that he is unaware of Defendant Talbert's "involvement with respect to this incident".[13] There are no disputable, material facts that pertain to Defendant Talbert: there is no allegation or evidence that he arrested Plaintiff without probable cause; that he failed to perform a reasonable investigation into the criminal matter; that he caused Plaintiff to be jailed for ten days until he was able to post bond; or that he had anything to do with transporting Plaintiff to the county magistrate or with transporting Plaintiff to the jail afterwards. In short, there are no facts material to Plaintiff's claims of arrest without probable cause or unconstitutional detention with respect to Defendant Talbert that would require a jury's resolution. Therefore, as an initial matter, the ***Motion for Summary Judgment*** with respect to Defendant Talbert should be **GRANTED**.

---

[13] Document No. 61-3 at 15 and 35, Quigley deposition at page 56, lines 13-16, page 137, lines 18-20.

With regard to the remaining Defendants, there appears to be no genuine dispute that none of the Defendant law enforcement officers observed what happened between Plaintiff and the three individuals *before* their arrival at the scene. Therefore, whether Plaintiff was, as he contends was his right, defending himself as having been a recent victim of assault and battery were facts not known to law enforcement upon their arrival at the scene. According to Plaintiff, the facts known to Defendant law enforcement officers upon their arrival on scene were: that Plaintiff had a black eye; that Plaintiff was not questioned by any Defendant law enforcement officers; and that Mr. Townson alleged that Plaintiff tried to stab him with his knife, so he hit his face. Next, Plaintiff asserts that after being placed in handcuffs and under arrest, during Plaintiff's appearance before the county magistrate, Defendant Bills[14] advised the magistrate, "They're all drunk."[15]

The undersigned is mindful that "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." Michigan v. DeFillippo, 443 U.S. 31, 39, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Indeed, the probable cause standard is lower than the standard to convict – probable cause requires only " 'a reasonable ground for belief of guilt,' " Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (quoting McCarthy v. De Armit, 99 Pa. 63, 69 (1881)); See, e.g., Krause v. Bennett, 887 F.2d 362, 371 (2d Cir.1989) ("[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful.").

Accordingly, neither subsequently dropped charges nor an acquittal indicate a lack of probable cause for an arrest. Defendants are correct in their contention that Plaintiff "conflates

---

[14] As mentioned *supra*, it appears that Defendant Williamson actually transported Plaintiff to be arraigned by the county magistrate.
[15] Document No. 61-3 at 13 and 14; Quigley deposition at page 46, line 24, and at page 50, lines 4-5.

probable cause to arrest with the standard of 'beyond a reasonable doubt' necessary to convict." (Document No. 62 at 10.) Plaintiff argues that had Defendants conducted a reasonable investigation, by obtaining a statement from Plaintiff and the other witnesses at the scene, then they would have known that Plaintiff was defending himself, and therefore would have realized they had no probable cause to arrest Plaintiff. However, the Defendant officers had "a reasonable ground for belief of guilt" that is supported by the facts they observed at the scene: Plaintiff was holding a knife pointed towards three individuals who were slowly backing away; and one of the three individuals explained that he gave Plaintiff a black eye because he pulled a knife on him. Even if one of the Defendant officers asked Plaintiff for his version of events, the probable cause for Plaintiff's arrest is not negated – the Defendants are not charged with deciphering the truth between Plaintiff's statement and Mr. Townson's statement or any other witness's statement – that is a factual determination for a court or jury. In short, Plaintiff's argument that his version of events from that evening create material and disputed facts that a court or jury could reasonably conclude he was not guilty of brandishing has no bearing on the probable cause supporting his arrest by Defendant police officers, and later with the probable cause finding by the county magistrate. Essentially, Plaintiff asks that Defendants become judge and jury at the scene of his arrest. As explained *supra*, that is not what the law requires for probable cause.

Moreover, *assuming arguendo* that Defendants took statements from each individual on scene, including Plaintiff, the Defendants could have had probable cause not only for Plaintiff's arrest of brandishing, but also probable cause for the arrest of Mr. Townson for assault and battery, and even probable cause for the arrest of the other two individuals for assault. Other options would be to arrest Mr. Townson for assault and battery, or arrest nobody at all. All these options would have been "reasonable" under the standard for probable cause. However, unfortunately for

Plaintiff, one of the Defendant law enforcement officers observed him committing the act of brandishing. In short, "it was objectively []reasonable to conclude there was probable cause that [Plaintiff] violated [West] Virginia's [brandishing] statute[.]" Graham v. Gagnon, 831 F.3d 176, 183 (4th Cir. 2016).

Accordingly, the remaining Defendants' ***Motion for Summary Judgment*** on this ground prevails and should be **GRANTED**.

## Qualified Immunity

A law enforcement officer will not be deprived of qualified immunity on a civil rights claim for his action in arresting a plaintiff because he relied on victim's statement without interviewing the plaintiff prior to seeking his arrest, even though victim had given differing statements as to the attack. Torchinsky v. Siwinski, 942 F.2d 257 (4th Cir. 1991) "Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hill v. Crum, 727 F.3d 312, 321 (4th Cir. 2013) (internal quotation marks omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); see Smith v. Reddy, 101 F.3d 351, 355 (4th Cir. 1996)("If the right was not clearly established at the relevant time or if a reasonable officer might not have known his or her conduct violated that right, the officer is entitled to immunity.").

Qualified immunity provides officers with "breathing room to make reasonable but mistaken judgments." Ashcroft v. al-Kidd, 563 U.S. 731, 743, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011). Qualified immunity protects " 'all but the plainly incompetent or those who

knowingly violate the law.' " White v. Pauley, 137 S.Ct. 548, 551, 196 L.Ed.2d 463, 468 (2017) (citing, in part, Mullenix v. Luna, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Courts have established qualified immunity for government officials in consideration of a number of factors, including: the substantial cost of litigation against government officials; the distraction of government officials from their public responsibilities; and the disincentive to responsible and capable persons to accept government positions if there is no protection against suits accusing them of misconduct in the performance of their public duties. Government officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

In determining the validity of a qualified immunity defense, the Court should be guided by a two-prong test: (1) whether the facts viewed in the light most favorable to the Plaintiff establish a deprivation of an actual constitutional right; and (2) whether that right was clearly established at the time of the purported violation. Id. The sequence of the steps is immaterial following Pearson. The Court may exercise discretion in deciding which of the two prongs "should be addressed first in light of the circumstances in the particular case at hand." Id. at 818. "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013)(internal quotation marks and citations omitted).

The theme repeated from this jurisprudence is "reasonableness", and therefore, the critical question is whether the Defendant law enforcement officers' conduct was "reasonable." As mentioned above, at the time of Plaintiff's arrest, Defendant law enforcement officers arrived on scene,[16] and although none of them asked Plaintiff for his version of events, they observed Plaintiff had a black eye, which was explained by Mr. Townson at the scene. Plaintiff's frustration is understandable, as he contends that Mr. Townson gave a false statement to Defendants, however, there is no evidence or allegation that Defendants would have known Mr. Townson or anyone at the scene provided false statements, especially given their observations upon arrival at the scene. Fourth Circuit jurisprudence holds that Defendant law enforcement officers are protected under qualified immunity, even when a victim of a crime provides differing statements. See, Torchinsky v. Siwinski.

It is also important to understand that when a person who is detained or arrested without a warrant, and then brought before a neutral judge or magistrate who then makes a finding that probable cause supported the arrest for the crime charged, the seizure or arrest is deemed reasonable and does not violate the person's Fourth Amendment rights. Gerstein v. Pugh, 420 U.S. 103, 114-115 (1975). However, if the magistrate's probable cause finding is "predicated solely on a police officer's false statements . . . then . . . a person is confined without constitutionally adequate justification." Manuel v. City of Joliet, 137 S. Ct. 911, 918-919 (2017). In this case, there has been no allegation or evidence to suggest that Defendants provided false statements to the county magistrate, or that the county magistrate's probable cause finding was based solely on Defendants' false statements.

---

[16] Plaintiff identified Defendant Bills, and testified that from the police report, Defendants Koher, Williamson, and Smith were present at the scene in the front yard near the Kroger parking lot. (Document No. 61-3 at 22, 28, 34, 35.) Indeed, Defendants Koher, Williamson, Smith, and Bills were present at the scene according to the CAD sheet, although, as mentioned *supra*, Defendant Talbert was not. (See Document No. 61-5 at 4.)

An officer who makes an honest, but objectively unreasonable mistake, is not protected by qualified immunity. See Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011), cert. denied, 132 S. Ct. 781, 181 L.Ed.2d 488 (2011)("Although officers are only human and even well-intentioned officers may make unreasonable mistakes on occasion, the doctrine of qualified immunity does not serve to protect them on those occasions.") As stated *supra*, the objective facts observed by Defendants supported probable cause for Plaintiff's arrest for brandishing. Should Defendants have also interviewed Plaintiff in order to gather additional evidence to see what had happened prior to their arrival at the scene? Perhaps, as this would have provided additional detail of what transpired prior to their arrival, however, as stated *supra*, the arrest of Plaintiff, Mr. Townson, all parties involved, or none of them, would still have been reasonable responses by Defendant law enforcement officers at the time. Even assuming these Defendants made a "reasonable" mistake in light of their investigation, by not interviewing Plaintiff, qualified immunity provides officers with "breathing room to make reasonable but mistaken judgments." See, Ashcroft v. al-Kidd. In short, Defendants' conduct was reasonable, given the described scene, and within the "range of professional competence expected of an officer."[17]

In this case, the observable facts that Defendant law enforcement officers encountered upon their arrival on the scene, and given the statement provided by Mr. Townson that provided the additional support for probable cause for Plaintiff's arrest, Defendants did not violate the provisions set forth in Pearson v. Callahan and its progeny. In short, Plaintiff's arrest was not the product of "plainly incompetent" or in "knowing violation of the law", therefore, these Defendants are further protected under qualified immunity. White v. Pauley.

---

[17] Graham, 831 F.3d at 183.

Based on the foregoing, the undersigned **RECOMMENDS** that Defendants are entitled to summary dismissal of this matter, not only did probable cause support Plaintiff's arrest for brandishing, but also Defendants' actions are protected by qualified immunity. Even given the facts viewed in light most favorable to Plaintiff, there are no questions of fact as to whether he was deprived of an actual constitutional right that was clearly established at the time of the purported violation.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants ***Motion for Summary Judgment***. (Document No. 61.)

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933

(1986); <u>Wright v. Collins</u>, 766 F.2d 841 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to the *pro se* Plaintiff and to counsel of record.

ENTER: April 27, 2018.

Omar J. Aboulhosn
United States Magistrate Judge