IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

HARRY LAWRENCE QUIGLEY,

        Plaintiff,

v.                              CIVIL ACTION NO. 3:17-cv-01906

CITY OF HUNTINGTON, WEST VIRGINIA;
SHANE BILLS; CASEY WILLIAMSON;
JOEY KOHER; JASON SMITH; and
JAMES TALBERT,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Proceeding *pro se*, Plaintiff, Harry Quigley, commenced this suit under 42 U.S.C. § 1983 alleging, in relevant part, violations of his rights under the Fourth Amendment and the Fourteenth Amendment. *Compl.*, at ¶¶ 27–30, ECF No. 2. Per standing order, the case was referred to the Honorable Omar J. Aboulhosn, Magistrate Judge, for Proposed Findings and Recommendations ("PF&R"). *Standing Order*, at 2, ECF No. 3. In his PF&R issued on September 22, 2017, Magistrate Judge Aboulhosn recommends this Court grant Defendants' Motion for Summary Judgment (ECF No. 61). *PF&R*, at 26–27, ECF No. 68.

Plaintiff filed objections to the PF&R pursuant to 28 U.S.C. § 636(b)(1)(C) on May 11, 2018. *Pl.'s Objs. to PF&R,* ECF No. 69. As explained below, the Court **DENIES** Plaintiff's objections, **ADOPTS** Magistrate Judge Aboulhosn's Findings and Recommendations, to the extent they are consistent with this Memorandum Opinion and Order, and **GRANTS** Defendants' Motion for Summary Judgment.

1

## I. Background

Plaintiff's claims arise out of interactions he had with City of Huntington police officers. On March 17, 2017, a Huntington police officer arrested Plaintiff and charged him with brandishing, a misdemeanor offense. *Second Am. Compl.*, at ¶¶ 8–21 ECF No. 33; *PF&R*, at 2. The arrest occurred after a law enforcement officer witnessed part of an altercation during which Plaintiff produced a knife. Plaintiff claims it was in self-defense. *Second Am. Compl.*, at ¶¶ 20–23; *PF&R*, at 2.[1]

Prior to the incident, Plaintiff was walking to Kroger to purchase a few items. *Second Am. Compl.*, at ¶ 17; *PF&R*, at 1. In the one block between Plaintiff's residence and Kroger is the residence of Jason David Blankenship. *Id.* During three or four of Plaintiff's previous trips to Kroger, Mr. Blankenship, apparently intoxicated on each occasion, had "interrupted" Plaintiff's walks. *Id.* Plaintiff kept interactions with Mr. Blankenship brief and cordial. *Id.*

At roughly 7:30 P.M. on March 17, 2017, Mr. Blankenship once again attempted to engage Plaintiff as he was walking to Kroger. *Id.* On this occasion, Mr. Blankenship had two male friends with him. *Id.* Mr. Blankenship called out to Plaintiff, soliciting Plaintiff to purchase beer for he and his friends. *Second Am. Compl.*, at ¶ 18; *PF&R*, at 2. Believing the men were intoxicated, Plaintiff rebuffed Mr. Blankenship's request. *Second Am. Compl.*, at ¶ 18. Apparently unhappy with Plaintiff's response, the three men descended from Mr. Blankenship's porch on which they

---

[1] Whether the initial responding officer at the scene was a Cabell County deputy sheriff or a Huntington Police officer is a matter of debate. Plaintiff insists this unnamed individual is a member of the Cabell County Sheriff's Department who frequently patrols the Kroger parking lot, but has submitted no evidence to this effect. Defendants have submitted documentation that indicates the initial responding officer was Defendant Bills with the Huntington Police Department (ECF No. 61-5, at 4). *PF&R*, n.1.

were standing, surrounded Plaintiff, and insisted he procure the alcohol they desired. *Id*. at ¶¶ 18–20; *PF&R*, at 2.

During the ensuing exchange, one of Mr. Blankenship's intoxicated friends punched Plaintiff in his right eye. Plaintiff stepped back., and he pulled a roughly six-inch long, unsheathed straight blade from his waistband. *Second Am. Compl.*, at ¶ 20.[2] The three aggressors, while staring past Plaintiff, began to back up simultaneously with the production of the knife. *Id*. at ¶ 21.

Plaintiff, turning to see what held the aggressors' attention, saw a law enforcement officer on one knee, with his pistol aimed at Plaintiff, who instructed him to drop the knife. *Id.* at ¶¶ 21–22; *PF&R*, at 3. The officer, who had been conducting his regular patrol, was roughly 20 feet away from the scuffling group when he saw the knife. *Id.*

Shortly thereafter, several Huntington Police Department cruisers arrived at Mr. Blankenship's house. *Id.* While the police officers spoke with Mr. Blankenship and his two friends, officers handcuffed and frisked Plaintiff, then ordered him to sit in the back of a cruiser. *PF&R*, at 2. An officer took a photo of Plaintiff's black eye, but at no point did any officer interview Plaintiff. *Second Am. Compl.*, at ¶¶ 25–26; *PF&R*, at 2. Officers then transported Plaintiff to the Huntington police station. *Second Am. Compl.*, at ¶ 23; *PF&R*, at 2. Officers told Plaintiff they did not see anything for which they could arrest Mr. Blankenship or his associates. *Second Am. Compl.*, at ¶ 23. However, officers stated Mr. Blankenship asked officers not to arrest Plaintiff. *Id*.

Plaintiff was presented before a county magistrate judge, who questioned the Huntington police officer about the arrest. *Second Am. Compl.*, at ¶ 24; *PF&R*, at 2. The officer told the county magistrate judge that all the men involved in the confrontation were drunk, even though Plaintiff was not intoxicated. *Second Am. Compl.*, at ¶ 24. Plaintiff was not given an opportunity to correct

---

[2] The order of these events is also in contention. *PF&R*, at 2

the inaccurate account given by the officer because the magistrate judge never elicited Plaintiff's version of events. *Id*. The magistrate judge advised Plaintiff he was being charged with misdemeanor brandishing, he would be assigned a public defender, and he had to go to jail. *Id.* at ¶ 25. The magistrate judge set Plaintiff's bond at $5,000, a sum Plaintiff could not afford. Plaintiff remained in jail for ten days, only gaining release when his 89-year-old aunt drove 80 miles to post Plaintiff's bond. *Id.* At the May 19, 2016 preliminary hearing, Mr. Blankenship, who had failed to appear for the first scheduled preliminary hearing, finally appeared and notified the magistrate judge he did not wish to proceed with the charge against Plaintiff. *Id.* at ¶ 27. Upon this notification, the magistrate dismissed the charge. *Id.*; *PF&R*, at 2.

## II. Standard of Review

This Court conducts a *de novo* review of those portions of the magistrate judge's proposed findings and recommendations to which a party objects. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). The Court, however, is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III. Discussion

Magistrate Judge Aboulhosn's PF&R recommends this Court grant summary judgment in favor of all Defendants, finding (1) no constitutional violations were effectively alleged against Defendant James Talbert, (2) the remaining Defendants, Shane Bills, Casey Williamson, Joey Koher, Jason Smith, and the City of Huntington, had sufficient probable cause to arrest Plaintiff,

4

and (3) the same remaining Defendants were protected by qualified immunity. *PF&R*, at 19, 26.

Plaintiff objects to the PF&R on the following five grounds, alleging:

1) Summary judgment is inappropriate as there are disputes of material fact. *Pl.'s Objs. to PF&R*, at 1.

2) Magistrate Judge Aboulhosn used the incorrect standard for determining "probable cause." and the application of the "correct" standard would yield a finding that probable cause did not exist during Plaintiff's arrest. *Id.* at 2–4.

3) "Due Process" requires a jury trial to determine probable cause. *Id.* at 4–5.

4) Regarding Defendant Talbert, Magistrate Judge Aboulhosn both used the incorrect standard of review for summary judgment and incorrectly found a lack of participation on his part. *Id.* at 5–6.

5) Magistrate Judge Aboulhosn came to an incorrect conclusion of law for determining qualified immunity applies, as there was no reasonable investigation to establish probable cause. *Id.* at 6–7.

The Court addresses each of these in turn.

A) *Genuine Disputes of Material Fact.*

Plaintiff alleges in his objections to the PF&R, by reference, three genuine disputes of material fact.[3] *Id.* at 1; *Pl.'s Obj. Summ. J.*, at 37–38, ECF No. 64. These are (1) the chronological order of when Plaintiff drew his knife and when he was struck by Mr. Blankenship's associate, Mr. Townson, (2) the identity of the responding officer who witnessed Plaintiff holding the knife, and (3) whether Plaintiff was questioned about the altercation after his arrest. *Pl.'s Obj. Summ. J.*, at 22–25, 27–28, 37–38.

---

[3] While Plaintiff's Objections to the PF&R state Plaintiff, in his filed Opposition to Defendants' Motion for Summary Judgment, "delineated four major material facts in genuine dispute," the referenced document only substantially addresses three disputed facts, as two statements are opposing sides of the same contention. *Pl.'s Obj. Summ. J.*, at 22–25, 27–28, 37–38.

5

Summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Facts are only material if they "might affect the outcome of the suit under the governing law," and "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine materiality, "[t]he inquiry performed is . . . whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. A trial judge does not need to make a determination of fact to identify whether a disputed event is material. *Id.* Furthermore, a material fact is not in genuine dispute if they are based solely on a party's self-serving testimony. *See Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004) ("[A] self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.").

Plaintiff seemingly misunderstands the law as requiring a resolution as to the sequence of events in the altercation, as well as the contested identity of the first officer on the scene. While such a determination may be necessary for a conviction of criminal guilt, or liability in a civil claim between Plaintiff and his assailant, neither are the legal issue presented to the Court. In this case, Plaintiff's right at issue is his Fourth Amendment right to be free of unreasonable seizures. *See Humbert v. Mayor and City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017) (providing where plaintiff claimed he was improperly arrested pursuant to an arrest warrant because there lacked probable cause, plaintiff's claim under § 1983 was for unreasonable seizure under the Fourth Amendment). The relevant assessment is whether or not Defendants had probable cause, as would be required for this type of Fourth Amendment seizure. *Smith v. Reddy*, 101 F.3d

351, 356 (4th Cir. 1996); *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (finding lack of probable cause as a required element of malicious prosecution under the Fourth Amendment).

The mere existence of disputed facts is not dispositive in determining summary judgment, as they need to have a bearing on whether probable cause exists. As discussed below, the Court finds the disputed facts are not critical in determining probable cause, and thus denies Plaintiff's first objection.

B) *The Standard for Probable Cause*

Plaintiff's second objection alleges an incorrect standard to determine probable cause was applied by Magistrate Judge Aboulhosn. Plaintiff specifically alleges Defendants did not conduct a thorough enough investigation, which precludes a finding of probable cause. *Pl.'s Objs. to PF&R*, at 2.

Whether probable cause existed for the warrantless arrest of Plaintiff depends upon the totality of the circumstances surrounding his arrest. *Illinois v. Gates,* 462 U.S. 213, 230 –32 (1983). "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979). While probable cause is a higher standard than reasonable suspicion, it is a lesser standard than the one necessary to convict, *i.e.,* beyond a reasonable doubt. *See Wong Sun v. U.S.,* 371 U.S. 471, 479 (1963).

Under West Virginia law, probable cause to make a warrantless arrest for a misdemeanor only exists "when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that a misdemeanor is being committed in his presence." Syl. Pt 1, *State v. Forsythe*, 460 S.E.2d 742, 743 (W. Va. 1995); *see also* W. Va. Code

§ 62-10-6 ("If any person shall, in the presence of a constable, [commit a misdemeanor] . . . such constable may, without warrant or other process, or further proof, arrest such offending person."). West Virginia courts have clarified further that "in his [or her] presence" requires that that the officer perceive the criminal behavior through at least one of his or her senses. *Forsythe*, 460 S.E.2d at 745.

Plaintiff appears to misread the wording of the law, citing case law as stating that probable cause is determined by "whether an ordinarily prudent person in the cops shoes had viewed the totality of the circumstances." *Id.* The totality-of-the-circumstances, as outlined by the Supreme Court, is a determination based on balancing "the relative weights of all the various indicia of reliability (and unreliability)." *Illinois v. Gates*, 462 U.S. at 234. This is not a mandate to conduct an exhaustive investigation. The Fourth Circuit has clarified an investigating officer need not "exhaust[] every potential avenue of investigation." *Wadkins v. Arnold*, 214 F.3d 535, 543 (4th Cir. 2000). "[O]nce probable cause to arrest a suspect is established, an officer is not required to continue to investigate for exculpatory evidence before arresting such suspect." *United States v. Galloway*, 274 F. App'x 241, 249 (4th Cir. 2008); *see also McKinney v. Richland Cty. Sheriff's Dep't.,* 431 F.3d 415, 418–19 (4th Cir. 2005) ("The fact that [the officer] did not conduct a more thorough investigation before seeking the arrest warrant does not negate the probable cause established by the victim's identification."). Furthermore, once probable cause is established, it is not undermined by a false submission to a magistrate judge. *See Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012) (finding false statements in an affidavit were not "material" as a corrected affidavit would provide adequate support for a magistrate judge's finding of probable cause).

Officers need only have "a reasonable ground for belief of guilt[.]" *Brinegar v. United States*, 338 U.S. 160, 175 (1949). For purposes of establishing probable cause and exacting an

8

arrest, it is not material whether Defendants definitively discerned the factual order of events, nor whether they exhausted all investigatory routes. So long as a law enforcement officer perceived Plaintiff brandishing of a knife at Mr. Blankenship and his associates, probable cause existed.

While it would be necessary for an arresting officer to personally perceive the behavior that formed the basis for a misdemeanor arrest, and a dispute on these grounds could be material, Plaintiff has not identified any evidence to make such a dispute genuine.[4] "Although we do not make credibility determinations at the summary judgment phase, we should also not find a genuine dispute of material fact based solely on [Plaintiff] 's self-serving testimony." *Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).

As such, the Court reaffirms its above denial of Plaintiff's first objection, finding the determination of the order of events during the altercation with Mr. Townson, as well as the alleged insufficiencies of Defendants' investigation are not material. Furthermore, the dispute of the identity of the responding officer is self-serving and not "genuine." The Court also finds the proper standard for probable cause ultimately was applied by Magistrate Judge Aboulhosn.[5] Thus. the Court denies Plaintiff's second objection.

---

[4] While the Court finds Plaintiff's claim as to the identity of the responding officer is not a genuine dispute, the Court believes it would be reasonable to find the disputed fact, as alleged, is not material. Plaintiff states the responding officer witnessed Plaintiff holding a knife pointed at Mr. Blankenship, and that this officer "did everything perfectly" in regard to Plaintiff's detention. *Pl.'s Depo.*, at 29, lines 17–18, ECF No. 61-3. Plaintiff also stated that after this officer detained him, there was a "transition [of] the matter from the Cabell County Deputy, to the Huntington cops." *Pl.'s Obj. Summ. J.*, at 29. As alleged, Plaintiff's self-serving recount of events still appears to establish probable cause and, under the doctrine of "collective knowledge," that probable cause formed the basis of the arrest by Defendant Bills. *See United States v. Massenburg*, 654 F.3d 480, 493 (4th Cir. 2011) ("[S]o long as the officer who orders an arrest or search has knowledge of facts establishing probable cause, it is not necessary for the officers actually making the arrest or conducting the search to be personally aware of those facts.").

[5] Though Magistrate Judge Aboulhosn's PF&R incorrectly omits the requirement that an officer must personally perceive a misdemeanor to have probable cause for a warrantless arrest, his finding that Plaintiff's contentions are self-serving and that probable cause existed still stand.

C) *Probable Cause as a Question of Law.*

Plaintiff's third objection alleges that determination of probable cause is a question for the jury to answer. If disputed, the facts underlying a basis for probable cause are usually a question for a jury. However, once the facts are determined, the question of probable cause is properly decided by the Court. "In [a malicious prosecution] action probable cause is a mixed question of law and fact. But where the facts are admitted or assumed, whether they constitute probable cause or not, or whether from them the existence or absence of probable cause is to be inferred, is a pure question of law for the decision of the court and not for the jury. *Staley v. Rife*, 156 S.E. 113, 113 (W. Va. 1930).

As the Court has determined there are no genuine disputes of material fact, this question is solely within the ken of the Court to decide. The Court denies Plaintiff's third objection.

D) *Standard to Sufficiently Allege a Defendant's Involvement.*

Plaintiff's fourth objection is in regard to Magistrate Judge Aboulhosn's finding that the allegations against Defendant Talbert's involvement were insufficiently pleaded. Plaintiff states Defendant Talbert "failed to intervene and stop the violations of Quigley's civil rights." *Pl.'s Objs. to PF&R*, at 5.

"[T]he plaintiff in a [§ 1983] suit . . . must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). A state official can be implicated in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159 (1985). In an official-capacity suit, however, "[m]ore is required": the suit is "treated as a suit against the entity," which must

10

then be a "'moving force' behind the deprivation," thus, the entity's "'policy or custom' must have played a part in the violation of federal law." *Id.*

Here, Magistrate Judge Aboulhosn correctly finds Plaintiff failed to allege any specifics as to Defendant Talbert's involvement. Without any allegation of a policy or custom on behalf of the department, there is no alleged claim against Defendant Talbert in his official capacity. Furthermore, through inference and liberal construction, Plaintiff attempts to allege Defendant Talbert's personal involvement through some form of vicarious liability for the other named Defendants' alleged lack of probable cause. However, beyond what appears to be a perfunctory role of booking Plaintiff, Defendant Talbert is not alleged to have participated in the claimed deprivation of Plaintiff's civil rights. Calls by Plaintiff that Defendant Talbert had a duty to intervene based on allegations of a wrongful arrest that occurred without any claims of his personal knowledge or involvement ring hollow. *Compare with King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016) (finding a properly alleged § 1983 claim in a defendant's personal capacity when the plaintiff alleged a warden made a proactive decision by overturning a committee's recommendation, which led to an alleged deprivation of civil rights.).

As with other aspects of the allegations, Plaintiff has failed to specify a cogent and legally sound complaint against Defendant Talbert. Therefore, the Court denies Plaintiff's fourth objection.

E) *Qualified Immunity*

In the fifth and final objection, Plaintiff alleges that Magistrate Judge Aboulhosn erred in determining that qualified immunity applies, as there was no reasonable investigation to establish probable cause.

Insofar as the Court has determined the existence of probable cause, the grounds for Plaintiff's objection are insufficient. With a finding of probable cause, the facts do not illustrate that Defendants violated a statutory or constitutional right. As a result, the Court denies Plaintiff's fifth objection on those grounds.

**IV. Conclusion**

Accordingly, for the forgoing reasons, this Court **DENIES** Plaintiff's Objections to the PF&R (ECF No. 69), **ADOPTS** the PF&R (ECF No. 68), to the extent that it is not contradicted herein, and **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 61).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unpresented parties.

ENTER: September 27, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE