# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# HUNTINGTON

**HARRY LAWRENCE QUIGLEY,**

    Plaintiff,

v.                                                              CIVIL ACTION NO.: 3:17-CV-1906 (GROH)

**CITY OF HUNTINGTON WV,**
**SHANE BILLS, In both his official**
**and personal capacities,**
**CASEY WILLIAMSON, In both his**
**official and personal capacities,**
**JOEY KOHER, In both his official**
**and personal capacities,**
**JASON SMITH, In both his official**
**and personal capacities and**
**JAMES TALBERT, In both his official**
**and personal capacities,**

    Defendants.

## MEMORANDUM OPINION AND ORDER DISMISSING REMAINING CLAIMS

The Fourth Circuit Court of Appeals remanded this matter to the Southern District of West Virginia for further consideration of the Plaintiff's unresolved claims. ECF No. 78. Thereafter, the Fourth Circuit designated and assigned the undersigned to take the Plaintiff's unresolved claims under consideration. ECF No. 91.

The Plaintiff's unresolved claims call into question the constitutionality of W. Va. Const. art. VIII, § 10, and W. Va. Code § 61-7-11. ECF No. 78. The State of West Virginia declined to intervene in this matter. ECF No. 88. The parties have fully briefed this matter and it is now ripe for review. For the following reasons, the Plaintiff's unresolved claims are dismissed with prejudice.

## I. Background

**A. Factual Background**

The Plaintiff's claims arise out of interactions he had with City of Huntington police officers. On March 17, 2016, a Huntington police officer arrested the Plaintiff and charged him with brandishing, a misdemeanor offense. The arrest occurred after a law enforcement officer witnessed part of an altercation during which the Plaintiff produced a knife. The Plaintiff claims it was in self-defense.[1]

Prior to the incident, the Plaintiff was walking to Kroger to purchase a few items. In the one block between the Plaintiff's residence and Kroger is the residence of Jason David Blankenship. During three or four of the Plaintiff's previous trips to Kroger, Mr. Blankenship, appearing intoxicated, had "interrupted" the Plaintiff's walks. The Plaintiff always kept interaction with Mr. Blankenship brief and cordial.

At roughly 7:30 p.m. on March 17, 2016, Mr. Blankenship once again attempted to engage the Plaintiff as he was walking to Kroger. On this occasion, Mr. Blankenship had two male friends with him. Mr. Blankenship called out to the Plaintiff, soliciting the Plaintiff to purchase beer for him. Believing the men were intoxicated, the Plaintiff rebuffed Mr. Blankenship's request. Apparently unhappy with the Plaintiff's response, the three men descended from Mr. Blankenship's porch, surrounded the Plaintiff and insisted he procure the alcohol they desired.

---

[1] Whether the initial responding officer at the scene was a Cabell County deputy sheriff or a Huntington Police officer is a matter of debate. The Plaintiff insists this unnamed individual is a member of the Cabell County Sherriff's Department who frequently patrols the Kroger parking lot, but the Plaintiff has submitted no evidence to this effect. The Defendant's have submitted documentation that indicates the initial responding officer was Defendant Bills with the Huntington Police Department.

During the ensuing exchange, one of Mr. Blankenship's intoxicated friends punched the Plaintiff in his right eye. The Plaintiff stepped back and pulled a roughly six-inch long, unsheathed straight blade knife from his waistband. The Plaintiff held the knife in his right hand, pointing it toward the neck of the man who hit him. The three aggressors, while staring past the Plaintiff, began to back up simultaneously.

The Plaintiff, turning to see what held the aggressors' attention, saw a law enforcement officer on one knee, with his pistol aimed at the Plaintiff. The officer instructed the Plaintiff to drop the knife. The officer, who had been conducting his regular patrol, was roughly 20 feet away from the scuffing group when he saw the knife.

Shortly thereafter, several Huntington Police Department cruisers arrived at Mr. Blankenship's house. While the police officers spoke with Mr. Blankenship and his two friends, officers handcuffed and frisked the Plaintiff, then ordered him to sit in the back of a cruiser. An officer took a photo of the Plaintiff's black eye, but at no point did any officer interview the Plaintiff. The officers then transported the Plaintiff to the Huntington police station. The officers told the Plaintiff they had no reason to arrest Mr. Blankenship or his friends. The officers stated Mr. Blankenship asked officers not to arrest the Plaintiff.

When the Plaintiff was arraigned, the county magistrate questioned the officers about the arrest. An officer told the magistrate that all the men involved in the confrontation were drunk, even though the Plaintiff was not intoxicated. The Plaintiff was not given an opportunity to correct the inaccurate account given by the officer. The magistrate advised the Plaintiff he was being charged with misdemeanor brandishing, he would be assigned a public defender and was being detained. The magistrate set the Plaintiff's bond at $5,000, a sum the Plaintiff could not afford. The Plaintiff remained in

jail for ten days until a relative posted the Plaintiff's bond. On May 19, 2016, the alleged victim, who had failed to appear for the first scheduled preliminary hearing, appeared at the rescheduled preliminary hearing and notified the magistrate he did not wish to proceed with the charge against the Plaintiff. Upon this notification, the magistrate dismissed the charge.

### B. Procedural Background

On March 16, 2017, the Plaintiff, proceeding pro se, filed a complaint in the Southern District of West Virginia, accompanied by an application to proceed without prepayment of fees. ECF Nos. 1, 2. The same day, the case was assigned to Magistrate Judge Cheryl A. Eifert for findings of fact and recommendations for disposition. ECF No. 4. On April 7, 2017, the Defendants filed a motion to dismiss. ECF No. 14. On May 4, 2017, the Plaintiff filed a response to the Defendants' motion to dismiss [ECF No. 18] and a first amended complaint [ECF No. 19]. Magistrate Judge Eifert held a status conference on June 20, 2017. ECF No. 22. At the status conference, Magistrate Judge Eifert granted the Plaintiff's motion to file a first amended complaint and granted the Defendants leave to file an amended motion to dismiss. ECF No. 23. The next day, the Defendants filed a renewal of their previously filed motion to dismiss. ECF No. 24. On August 21, 2017, the Plaintiff filed a motion for leave to file a second amended complaint. ECF No. 28. Magistrate Judge Eifert granted the Plaintiff's motion [ECF No. 32] and the Plaintiff's second amended complaint was filed on the docket [ECF No. 33]. On September 22, 2017, Magistrate Judge Eifert entered proposed findings and recommendations, recommending the motion to dismiss be granted as to Defendant Joseph Ciccarelli and denied as to the remaining Defendants. ECF No. 38.

On September 29, 2017, the case was transferred from Magistrate Judge Eifert to Magistrate Judge Omar J. Aboulhosn due to a newly presented conflict. ECF No. 40. On October 6, 2017, the Plaintiff filed objections to Magistrate Judge Eifert's proposed findings and recommendations. ECF No. 45. On November 2, 2017, District Judge Robert C. Chambers entered a memorandum opinion and order adopting Magistrate Judge Eifert's proposed findings and recommendations. ECF No. 49. On January 17, 2018, the Plaintiff filed a motion to disqualify District Judge Chambers and Magistrate Judge Aboulhosn. ECF No. 58. District Judge Chambers and Magistrate Judge Aboulhosn denied the Plaintiff's motion. ECF Nos. 59, 60. On February 16, 2018, the Defendants filed a motion for summary judgment. ECF No. 61. On April 27, 2018, Magistrate Judge Aboulhosn entered proposed findings and recommendation, recommending the Defendants' motion for summary judgment be granted. ECF No. 68. On May 11, 2018, the Plaintiff filed objections to Magistrate Judge Aboulhosn's proposed findings and recommendation. ECF No. 69. On September 27, 2018, District Judge Chambers adopted Magistrate Judge Aboulhosn's recommendation and granted the Defendants' motion for summary judgment. ECF No. 71. Thereafter, the Plaintiff appealed to the Fourth Circuit Court of Appeals. ECF No. 74.

On April 11, 2019, the Fourth Circuit dismissed the appeal as interlocutory and remanded this matter for further consideration of the unresolved claims. ECF No. 78. On May 21, 2019, Magistrate Judge Aboulhosn entered an order providing notice to the State of West Virginia that this case has drawn into question the constitutionality of W. Va. Const. art. VII, § 10 and W. Va. Code § 61-7-11, and granting the State of West Virginia the opportunity to intervene. ECF No. 83. The same day, Magistrate Judge Aboulhosn

issued a briefing schedule. ECF No. 84. The State of West Virginia did not intervene. ECF No. 88. On June 20, 2019, the Plaintiff filed a motion for declaratory judgment and a brief in support. ECF Nos. 85, 86. On July 5, 2019, the Defendants filed a response. ECF No. 89. On July 11, 2019, the Plaintiff filed a reply. ECF No. 90.

On August 6, 2019, the Fourth Circuit designated and assigned the undersigned to take the unresolved claims under consideration. ECF No. 91. The remaining questions for this Court to decide include (1) whether Article 8, Section 10 of the West Virginia Constitution is unconstitutional to the extent that the West Virginia Legislature does not require or permit any justice or judge of any higher court to establish any rules that would dictate or mandate that a magistrate be a person licensed to practice the profession of law; and (2) whether West Virginia's brandishing statute, W. Va. Code Section 61-7-11, is unconstitutional to the extent that it interferes with the right to bear arms and to defend oneself. ECF No. 84.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly

can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586. That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence establishing there is indeed a genuine issue for trial. Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted). A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Savs. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967); see also id. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

### III. Discussion

The remaining issues in this case pertain to the constitutionality of W. Va. Const. art. VIII, § 10 and W. Va. Code § 61-7-11. No issues of fact remain. Accordingly, both issues are appropriate for the Court to decide on summary judgment.

**A. W. Va. Const. art. VIII, § 10**

The Plaintiff moves the Court to find W. Va. Const. art. VIII, § 10 null and void because it violates constitutional rights to due process and equal protection. The Plaintiff further moves the Court to order the State of West Virginia to replace all county

7

magistrates who are not licensed attorneys with licensed attorneys within sixty days of its Order.

W. Va. Const. art. VIII, § 10 provides, in relevant part:

> the legislature shall determine the qualifications and the number of magistrates for each court . . . provided . . . that the legislature shall not have the power to require that a magistrate be a person licensed to practice the profession of law, nor shall any justice or judge of any higher court establish any rules which by their nature would dictate or mandate that a magistrate be a person licensed to practice the profession of law.

The constitutional issue of non-lawyers serving as magistrates and of states having lawyers as magistrates in some jurisdictions and non-lawyers in others was addressed by the Supreme Court of the United States in North v. Russell, 427 U.S. 328 (1976) and the Supreme Court of Appeals of West Virginia in State ex rel. Collins v. Bedell, 194 W. Va. 390 (1995).

In North v. Russell, the Supreme Court of the United States held that a "two-tier trial court system with lay judicial officers in the first tier in small cities and an appeal of right with a De novo trial before a traditionally law-trained judge in the second does not violate either due process or equal protection guarantees of the Constitution of the United States." 427 U.S. at 339. In finding that non-lawyers serving as magistrates did not raise due process concerns, the Supreme Court emphasized that their "concern in prior cases with judicial functions being performed by nonjudicial officers has . . . been directed at the need for independent, neutral, and detached judgment, not at legal training." Id. at 337. In finding that the equal protection argument failed, the Supreme Court noted that "all people within a given city and within cities of the same size are treated equally." Id. at 338.

Similarly, in State ex rel Collins v. Bedell, the Supreme Court of Appeals of West Virginia held that "[a] defendant's due process rights set forth in the W. Va. Const. art. III, § 10 and the U.S. Const. amend. XIV, § 1 are not violated when a non-lawyer magistrate presides over the trial because W. Va. Code, 50-5-13 [1994] provides meaningful review on appeal." 194 W. Va. at 399. "[T]he reason state and federal constitutional principles of due process are not offended when a non-lawyer magistrate presides over the only jury trial a criminal defendant is entitled to receive is because the statutory scheme which sets forth this process also 'provides meaningful review on appeal' by enabling 'the reviewing court on appeal to ensure that a defendant was given a fair trial.'" State v. Chanze, 211 W. Va. 257, 260 (2002) (quoting Collins, 194 W. Va. at 399).

The Court does not find any basis to sway from the United States Supreme Court's decision in North v. Russell or the Supreme Court of Appeals of West Virginia's decision in State ex rel. Collins v. Bedell. While W. Va. Const. art. VIII, § 10 permits non-lawyers to serve as magistrates, criminal defendants are afforded meaningful review on appeal by a state circuit court judge who is required to be a licensed attorney. Moreover, the differences between magistrates and circuit court judges does not raise equal protection concerns. Accordingly, the Plaintiff's constitutional challenge fails because the Court does not find W. Va. Const. art. VIII, § 10 violates due process or equal protection.

**B. W. Va. Code § 61-7-11**

The Plaintiff moves the Court to find W. Va. Code § 61-7-11 void for vagueness and overbroad. Moreover, the Plaintiff moves the Court to find that the statute cannot qualify as a lawful predicate to charge him with the crime of "brandishing" and cannot be used as a defense to his claims.

### i. Infringement on Second Amendment Right

The Second Amendment to the United States Constitution, as well as Article III, § 22 of the West Virginia Constitution protects an individual's right to keep and bear arms. This constitutional right does not deprive the State of the authority, through the exercise of its police power, to enact laws, within constitutional limits, to promote the general welfare of its citizenry. See State v. Daniel, 182 W. Va. 643, 649-50 (1990). In enacting W. Va. Code § 61-7-11, the State exercised its legitimate police power.

W. Va. Code § 61-7-11 provides:

> It shall be unlawful for any person armed with a firearm or other deadly weapon, whether licensed to carry the same or not, to carry, brandish or use such weapon in any way or manner to cause, or threaten, a breach of the peace.

In determining that West Virginia's brandishing law does not violate a citizen's constitutional right to keep and bear arms, the court in State v. Daniel noted that citizens still have the right to keep and bear arms, "[h]owever, nothing in that constitutional amendment gives that citizen the right to use that weapon unlawfully, as described in W. Va. Code § 61-7-11." 182 W. Va. at 650. The Court finds that W. Va. Code § 61-7-11 does not deprive the Plaintiff of his right to keep and bear arms, but merely regulates the unlawful use of a weapon.

### ii. Void for Vagueness

The Plaintiff argues that W. Va. Code § 61-7-11 is written in such language that a common person of ordinary intelligence must guess at its meaning. Specifically, the Plaintiff argues that people would have to guess at what law enforcement officers

consider "breach of the peace" and "brandish" to mean because the terms are not defined by the statute.

"[T]he void-for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." United States v. Hosford, 843 F.3d 161, 170 (4th Cir. 2016) (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)). "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." United States v. Beason, 2011 WL 399896, *4 (N.D. W. Va. Jan. 21, 2011) (quoting U.S. v. Williams, 364 F.3d 556 (4th Cir. 2004)). "When reviewing a statute for vagueness, the court must 'indulge a presumption of constitutionality.'" United States v. Weaver, 2012 WL 727488, *11 (S.D. W. Va. March 6, 2012) (quoting Baggett v. Bullitt, 377 U.S. 360, 372 (1964)).

Brandishing a weapon is commonly understood as holding or waiving a weapon in the presence of someone in an intimidating manner. For example, the Merriam-Webster Dictionary defines "brandish" as "an act or instance of waving something menacingly or exhibiting something ostentatiously or aggressively." It is clear in this case that a common person of ordinary intelligence would understand that pulling a six-inch long, unsheathed straight blade from your waistband and pointing it at someone during an altercation would fall under the definition of "brandishing" a weapon.

In Gooding v. Wilson, the Supreme Court of the United States referred to a common-law textbook definition of breach of the peace. 405 U.S. 518, 527 (1972). The definition provided:

11

> '[t]he term 'breach of the peace' is generic, and includes all violations of the public peace or order, or decorum; in other words, it signifies the offense of disturbing the public peace or tranquility enjoyed by the citizens of a community. . . . By 'peace,' as used in this connection, is meant the tranquility enjoyed by the citizens of a municipality or a community where good order reigns amount its members.'

Id. Therefore, a common person of ordinary intelligence would understand that pulling an unsheathed straight blade on someone during an already heated altercation would disturb the peace. A person of average intelligence is capable of understanding that the Plaintiff's actions would be illegal conduct under the statute. The Court finds that the Plaintiff's challenge to W. Va. Code § 61-7-11's language, specifically the terms "brandish" and "breach of the peace," does not hold merit. W. Va. Code § 61-7-11 is not void for vagueness as applied to the facts of this case.

### iii. Overbreadth

In United States v. Chester, the Fourth Circuit Court of Appeals considered an overbreadth challenge in a Second Amendment context. 514 Fed. Appx. 393 (2013). The Fourth Circuit noted "that no circuit has accepted an overbreadth challenge in the Second Amendment context." Id. at 395. The Fourth Circuit held that "[e]ven assuming in principle that such a challenge is cognizable, however, we have clearly held that an individual 'to whom a statute was constitutionally applied,' cannot 'challenged that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.'" Id. (omitting internal citations).

The Plaintiff pulled a roughly six-inch long, unsheathed straight blade from his waistband in the midst of an altercation with three men, one of whom had just punched him in the right eye. He then pointed the straight blade in the direction of the man who

punched him. The Plaintiff clearly brandished his weapon in a manner to threaten a breach of the peace. W. Va. Code § 61-7-11 was constitutionally applied to the Plaintiff. Accordingly, the Court rejects the Plaintiff's facial overbreadth challenge.

### IV. Conclusion

For the foregoing reasons, the Plaintiff's two unresolved claims are hereby **DISMISSED WITH PREJUDICE**. The Court **DISMISSES** this action **WITH PREJUDICE** and **ORDERS** that this case be **STRICKEN** from the Court's active docket.

The Clerk is **DIRECTED** to transmit copies of this Order to the pro se Plaintiff and all counsel of record herein.

**DATED:** March 30, 2020

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE